IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| OMID EBRAHIMI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-00788 |
| ) | Judge Aleta A. Trauger |
| RENA BITTER, Assistant Secretary of ) | |
| State for Consular Affairs, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Plaintiff Omid Ebrahimi, a United States citizen, has filed a Petition for Mandamus Relief and Complaint for Injunctive Relief ("Complaint") (Doc. No. 1), naming as defendants Rena Bitter, Assistant Secretary of State for Consular Affairs, Sean Murphy, Chargé d'Affaires, U.S. Embassy in the United Arab Emirates, and Antony Blinken, Secretary of the United States Department of State, all in their official capacity (collectively referred to herein, in the singular, as the "State Department" or "government"). The plaintiff asks the court to enter an order compelling the State Department to adjudicate his wife's pending visa application under either the Administrative Procedures Act or the Mandamus Act. (Doc. No. 1, at 7.)

In response to the plaintiff's Petition, the State Department filed a Motion to Dismiss (Doc. No. 12) under Rule 12(b)(6), for failure to state a claim for which relief may be granted, in support of which the government filed a Memorandum of law and the Declaration of Chloe Peterman (Doc. Nos. 13, 14). The plaintiff filed a Memorandum in Opposition and his own Declaration (Doc. Nos. 20, 20-1), and the government filed a Reply (Doc. No. 23).

Following its initial review of the Motion to Dismiss, the court entered an Order giving notice of its intention to rely on matters outside the pleadings in ruling on the motion and to treat the motion as a Rule 56 motion for summary judgment. (Doc. No. 24.) The court gave the parties thirty days within which to submit any other material in their possession that is pertinent to the motion. (*Id.* at 2.) The plaintiff thereafter filed a Rule 34 Motion for Discovery (Doc. No. 25), to which the government has filed a Response in opposition (Doc. No. 33). In addition, the government submitted several additional declarations and a quantity of evidentiary material. (Doc. Nos. 28, 29, 30, 31.)

For the reasons set forth herein, the Motion for Discovery will be denied and the converted summary judgment motion will be granted.

I.  **MOTION FOR DISCOVERY**

In his Motion for Discovery, the plaintiff argues, first, that the court may rule on the Motion to Dismiss without converting it into a motion for summary judgment, because the statements in his Declaration are a "matter of public record" and simply consist of a "detailed timeline of events" that is not in dispute, and the Peterman Declaration submitted by the defendant relies on generalities rather than facts specific to the plaintiff's case. (Doc. No. 25, at 1–2.)

In the alternative, the plaintiff insists that he is entitled to discovery consisting of the full administrative record and all documents relating to the processing of his case and the cause of the delay in scheduling the interview of his wife. He also seeks numerous additional categories of documents, including information "about how many cases per month the National Visa Center currently processes," information "relating to which other government agencies and departments . . . have similar delays due to the pandemic," information relating to "what efforts the National Visa Center has taken to address the delays caused by the pandemic," as well as "sworn testimony" from the plaintiff and his wife about the hardships they have suffered and expert testimony about

how difficult the political climate in Iran is for women. (*Id.* at 2–3.)

The State Department, in response, asserts that the Motion for Discovery functions as an unnecessary and unauthorized sur-reply to the Motion to Dismiss and as an inappropriate motion to reconsider the court's Order giving notice that it would treat the Motion to Dismiss as a motion for summary judgment. The government contends both that the court did not abuse its discretion in converting the Motion to Dismiss into a summary judgment motion and that, regardless, the court's review of an agency action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, is on the administrative record. The Department represents that it has now submitted the complete administrative record, such as it is,[1] and the plaintiff has not argued that the record is incomplete or that the government has acted in bad faith.

The court finds that the plaintiff is not entitled to discovery, essentially for all of the reasons submitted by the State Department. In particular, further discovery will not advance the plaintiff's claims. Both parties have relied on matters outside the pleadings, and the court will consider the motion as one for summary judgment based on the record now before the court.

II.    **SUMMARY JUDGMENT MOTION**

   A.    **Background**

Ebrahimi is a United States citizen who lives in Tennessee. (Doc. No. 20-1, Ebrahimi Decl. ¶¶ 2–3.) His wife, Mahdiyeh Malekzadeh, lives in Iran. (Doc. No. 1, Compl. ¶ 1.)

On August 14, 2019, Ebrahimi filed an I-130 visa petition on behalf of Malekzadeh, which the United States Citizenship and Immigration Services ("USCIS") approved in April 2020. (Ebrahimi Decl. ¶¶ 4–5.) On April 27, 2020, Ebrahimi received confirmation that the Department

---

[1] Technically, when, as in this case, an agency "fails to act, there is no 'administrative record' for a federal court to review." *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012).

of State had assigned a Visa Application Number to Malekzadeh's application. (*Id.* ¶ 6.) The approval of an I-130 Petition does not grant any immigration status or benefit. *See* 22 C.F.R. § 42.41 ("The approval of a petition does not relieve the alien of the burden of establishing to the satisfaction of the consular officer that the alien is eligible in all respects to receive a visa.").

After approval of an I-130 Petition, the case is forwarded to the State Department's National Visa Center ("NVC") for pre-processing.[2] *See* Immigrant Visa Process Step 2: Begin National Visa Center Processing, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-rocessing.html. A petitioner is then required to submit fees, an affidavit of financial support, and other supporting documents to the NVC. *See id.*, Immigrant Visa Process Steps 2–5. Regulations require that a beneficiary then complete a Form DS-260 Electronic Application for Immigrant Visa and Alien Registration and appear before a consular officer abroad for the execution of the application and an interview. *See* Immigrant Process Step 6, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-5-collect-financial-evidence-and-other-supporting-documents/step-6-complete-online-visa-application.html; *see also* 22 C.F.R. §§ 42.63, 42.67. Consular officers alone have the authority to issue or refuse to issue an immigrant visa. 22 C.F.R. § 42.71(a). If an applicant is found eligible by an overseas consular officer and issued a visa by the consular officer, the beneficiary may use the visa to travel to the United States to apply for admission from the Department of Homeland Security.

---

[2] According to the Declaration of Rebecca Austin, Assistant Director of the NVC, the NVC is part of the Visa Services Directorate within the Bureau of Consular Affairs. Its function is to "improve efficiency of worldwide consular operation by reducing clerical burdens on U.S. embassies and consulates abroad." (Doc. No. 29, Austin Decl. ¶¶ 1–2.) In that role, the NVC performs clerical processing of all immigrant visa petitions that are approved by the U.S. Citizenship and Immigration Services, including collecting and reviewing fees and documents required by law for the processing of immigrant visa applications. (*Id.* ¶ 2.)

In November 2021, Malekzadeh requested expedited review of her case from the NVC. She received an email response, stating that her request would be reviewed in the order in which it had been received. On November 30, 2021, she received notice that her request for expedited processing was "under review." (Doc. No. 20-1, Ebrahimi Decl. ¶¶ 7–8.) On December 14, 2021, the NVC notified Ebrahimi and Malekzadeh that all of their submissions and payments had been received. (*Id.* ¶ 9.) The State Department confirms that, as of December 14, 2021, the case was "documentarily qualified" for Malekzadeh to be "scheduled to make a visa application at interview." (Doc. No. 14, Peterman Decl. ¶ 5.)

Once a visa petition is determined to be "documentarily complete"—meaning that all required documents have been provided to the NVC—and a visa number has been assigned, then the NVC will schedule an appointment "for the beneficiary to appear for an interview and to execute his or her visa application at a U.S. embassy or consulate overseas before a consular officer.[3] (Doc. No. 29, Austin Decl. ¶ 2.) The defendant explains that the NVC

> prepares and sends an appointment letter to the beneficiary for each scheduled visa interview and sends the case file to the embassy or consulate to schedule the interview. As each embassy and consulate is only able to process a set number of immigrant visa applications a day, the NVC uses the date on which a case was documentarily complete to determine the order in which cases are scheduled for appointments in the event demand exceeds processing capacity.

(*Id.*)

Visa interviews are scheduled at the consular office having jurisdiction over the applicant's place of residence. *See* 22 CFR 42.61(a). ("[A]n alien applying for an immigrant visa shall make application at the consular office having jurisdiction over the alien's place of residence."). The

---

[3] Visa applications are adjudicated when they are executed. *See* 22 C.F.R. § 42.81 ("When a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.").

U.S. Embassy in Abu Dhabi processes immigrant visas for citizens of Iran. (Doc. No. 30, Chapman Decl. ¶ 5.) Thus, Malekzadeh's case was placed in the queue for interview scheduling at the U.S. Embassy in Abu Dhabi as of December 14, 2021.

The defendant has provided a graph documenting the "Backlog of Documentarily Complete Applicants Awaiting Appointments" at the U.S. Embassy in Abu Dhabi from March 1, 2020 through March 1, 2023. (*See* Austin Decl. ¶ 3.) As if March 1, 2023, there were 3,749 pending "immediate relative" applications pending at that embassy (in addition to over 3,000 "family preference" and "employment preference" applications). (*Id.*) As of March 30, 2023, there were 244 pending documentarily complete "immediate relative" applications ahead of Malekzadeh's, also awaiting the scheduling of an interview to make a visa application at the U.S. Embassy in Abu Dhabi. (*Id.* ¶ 4.)

According to Brenda Grewe, Director of the Office of Domestic Operations of the Visa Office, Bureau of Consular Affairs, as a result of the COVID-19 pandemic, the State Department's ability to process immigrant and nonimmigrant visas in Fiscal Years 2020 and 2021 decreased dramatically. (Doc. No. 28, Grewe Decl. ¶¶ 3, 4; *see generally* Doc. No. 31-1, McInerney Decl., *passim*, and exhibits attached thereto (documenting the resource restraints imposed on the functioning of U.S. embassies and consulates worldwide by the pandemic and the State Department's response to the pandemic and efforts to return to normal functioning).) In 2022, the State Department increased its processing of visa applications worldwide to nearly pre-pandemic levels (Grewe Decl. ¶¶ 3–4), but not enough to completely make up for the backlog (*see* Doc. No. 30, Chapman Decl. ¶¶ 8–9; *see also* Doc. No. 28-1).

In April 2021, the State Department began publicly posting an NVC "Immigrant Visa Backlog Report" on its website. *See* National Visa Center (NVC) Immigrant Visa Backlog Report,

https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html (last updated May 2023). As the Immigrant Visa Backlog Report explains, "the COVID-19 pandemic has dramatically affected the Department of State's ability to process immigrant visa applications" since March 2020. *Id.* While the State Department is "committed to resolving the immigrant visa backlog and transparently sharing the current status of our worldwide visa operations," the pandemic "continues to severely impact the number of visas [the United States'] embassies and consulates abroad are able to process." *Id.* Particular constraints vary "based on local conditions and restrictions, including local and national lockdowns; travel restrictions; host country quarantine regulations; and measures taken by [the] embassies and consulates to contain the spread of COVID-19." *Id.*[4]

As of the briefing on the present motion, Malekzadeh's visa interview still has not been scheduled. The plaintiff avers that the delay in processing Malekzadeh's application has caused, and continues to cause, both him and his wife great mental, emotional, and financial hardship and that, due to the political situation in Iran, his wife is unable to travel safely or to communicate regularly with him. (Ebrahimi Decl. ¶¶ 13–22.)

In October 2022, Ebrahimi filed suit in this court against several government officials under the APA's unreasonable delay provision, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361, asking the court to compel the government to adjudicate his wife's visa application

---

[4] In 2019, there was an average of 60,866 applicants awaiting the scheduling of an interview each month. As of August 31, 2021, there were 516,966 applicants worldwide whose applications were considered "documentarily complete" and "ready for interview." *See* Immigrant Visa Backlog Report – September 2021, https://travel.state.gov/content/dam/visas/iv-backlog-report/IV-report-September-2021.pdf. By April 30, 2023, the number of pending eligible applicants had decreased to 396,877 and was projected to be 354,973 by the end of May 2023. *See* National Visa Center (NVC) Immigrant Visa Backlog Report, available at https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html (updated May 2023).

under either Act. The government moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), on the basis that the plaintiff's allegations of delay, under the circumstances, fail to state a claim for unlawful or unreasonable delay. Ebrahimi opposes the motion. (Doc. No. 20.)

**B.    Discussion**

Although a court may order an agency "to perform a [mandatory] act," *i.e.*, "to take action upon a matter," a court may not "direct[] *how* [the agency] shall act." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) (citation omitted). Here, there is no real allegation that the State Department has simply refused to act entirely. Rather, the plaintiff insists that the agency is "unreasonably delaying action" and has failed to adjudicate Malekzadeh's petition within a reasonable time. (Compl. ¶¶ 15, 23.)

To determine whether the plaintiff has shown that agency action has been "unreasonably delayed," the court considers the factors laid out in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (the "*TRAC* factors"):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451–52 (6th Cir. 2022) (quoting *TRAC*, 750 F.2d at 80).

Whether delay is "unreasonable" depends in part upon "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). The D.C. Circuit has noted the "importance of competing priorities in assessing the reasonableness of an administrative delay." *Id.* (internal citations and quotation marks omitted). In particular, courts generally may not grant relief where an "order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain." *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991); *see also Martin v. O'Rourke*, 891 F.3d 1338, 1347 (Fed. Cir. 2018) (quoting *In re Barr Labs.* in the context of claims that the Department of Veterans Affairs had unreasonably delayed consideration of appeals); *Cumberland Cty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 56 (4th Cir. 2016) (quoting *In re Barr Labs.* in the context of administrative appeals on claims for Medicare reimbursement).

### 1. TRAC Factors One & Two

Because Congress has provided no statutory timeframe indicating how quickly it requires the State Department to process visa applications, *TRAC* factor two is inapplicable. *Accord Memon v. Blinken*, No. No. 22-0754 (CKK), 2023 WL 1438396, at *2 (D.D.C. Feb. 1, 2023).

The first *TRAC* factor—that the time agencies take to make decisions must be governed by a "rule of reason"—is considered the "most important." *Telukunta v. Mayorkas*, No. 2:21-CV-10372, 2021 WL 2434128, at *2 (E.D. Mich. June 15, 2021) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)); *see also In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1139 (9th Cir. 2020). The inquiry centers on "whether the agency's response time . . . is governed

by an identifiable rationale." *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

This factor weighs heavily in favor of the defendant, because the State Department employs a "first-in, first-out" methodology for processing visa applications, and courts have uniformly concluded that this methodology satisfies the rule of reason. *See, e.g.*, *Telukunta*, 2021 WL 2434128, at *2; *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021); *Muvvala v. Wolf*, No. 20-cv-02423, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020); *see also Barrios Garcia*, 25 F.4th at 453 (finding that the plaintiffs "adequately alleged that no rule of reason governs the U-visa-adjudication process," where, according to the plaintiffs, "many U-visa applications were filed after but decided before theirs," which showed that "USCIS does not make U-status waiting list decisions on a first in, first out basis").

The first-in, first-out rationale satisfies the rule of reason, and the plaintiff does not allege any facts suggesting that that rule is not being applied to Malekzadeh's application. Regardless, courts often look to the length of delay as a rough yardstick to determine whether the first-in, first-out rule is actually being applied. Courts considering the delay in adjudicating visa petitions during the COVID era have routinely held that delays equivalent to or longer than the one at issue here—just under eighteen months (dating from December 14, 2021) to date—are not unreasonable. *See, e.g.*, *Hussein v. Beecroft*, 782 F. App'x 437, 444 (6th Cir. 2019) ("A delay of less than two years by itself, given the limited resources and corresponding demands on our immigration offices, does not establish a plausible case for mandamus or any other relief sought by plaintiffs."); *Poursohi v. Blinken*, No. 21-CV-01960-TSH, 2021 WL 5331446, at *6 (N.D. Cal. Nov. 16, 2021) (finding that "the eighteen months of inaction alleged in the case at bar [from the date the plaintiffs application was documentarily complete] does not by itself indicate an unreasonable delay" and, further, that

"[t]he global suspension of routine services at its embassies and consulates . . . due to the COVID-19 pandemic . . . is also highly relevant and cuts heavily in favor of a finding that the delay here is not unreasonable"); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (finding a twenty-nine-month delay [from the agency's last action], as of the time suit was filed, not unreasonable and noting that it was "highly relevant that the Moscow Embassy closed during some of this waiting period due to COVID-19"); *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-00397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) ("[M]any courts evaluating similar delays [*i.e.*, twenty-five months] have declined to find a two-year period to be unreasonable as a matter of law." (collecting cases)).[5] Some courts have held that delays of even three or more years may be reasonable. *See, e.g.*, *Fangfang v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020) (finding three-year delay in adjudicating asylum application not unreasonable where the agency processed applications in the order they were received in an attempt to address "a systemic crisis"); *Yavari v. Pompeo*, No. 2:19-cv-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.").

The delay at issue here, particularly given the interference of a global pandemic and the State Department's efforts to deal with the resulting backlog of visa applications, is not unreasonable. *Accord Memon*, 2023 WL 1438396, at *3 ("[T]he question is not whether a length of time is 'unfair' in some loose, equitable sense, but rather whether the delay is caused by a 'rule of reason' and the resources available to the agency. . . . There has been no breakdown [in the system] here; Defendant simply continues to face 'an extraordinary backlog of visas across the

---

[5] As demonstrated by these cases, courts calculate the length of any delay from the last date of agency action. In this case, the last agency action was to confirm that the case was documentarily complete and that Malekzadeh was in line to be scheduled for an interview.

world' arising from the shutdown in global services during the height of the COVID-19 pandemic."). It is unfortunate for Ebrahimi and Malekzadeh that their application coincided with a global pandemic, but nothing about the circumstances as pleaded here permit judicial intervention based on delay alone.

### 2. TRAC Factor Four

The fourth *TRAC* factor is "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. This factor weighs strongly against the plaintiff, as reordering the queue to bump Malekzadeh's interview ahead of others that have been pending longer would adversely affect agency priorities. *See Hussein*, 782 F. App'x at 444 (holding that the "plaintiffs cannot jump the line by simply requesting mandamus or other relief" and noting approvingly that the D.C. Circuit had refused to grant relief, where "'putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain'" (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100); *see also Palakuru*, 521 F. Supp. 3d at 52 ("This factor is so critical that the [D.C.] Circuit has 'refused to grant relief, even though all the other factors considered in *TRAC* favored it . . . .'" (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100)), *appeal dismissed*, No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021).

### 3. TRAC Factors Three & Five

The third and fifth TRAC factors address the delay's effect on the visa applicant. Under the third factor, the court must consider that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *TRAC*, 750 F.2d at 80. The fifth factor "take[s] into account the nature and extent of the interests prejudiced by delay." *Id.* The analysis of these factors often overlaps. *Martin v. O'Rourke*, 891 F.3d 1338, 1346–47 (Fed. Cir. 2018) (collecting cases).

The plaintiff asserts that the delay in his case has caused him and Malekzadeh to suffer depression over being apart and unable to have children and has otherwise caused significant financial and emotional injury due to the physical separation. In addition, he contends generally that it is dangerous for a woman to live alone in Iran. (Doc. No. 20-1, Ebrahimi Decl. ¶¶ 13–22.) These are interests shared by virtually every applicant whose visa application has been delayed by the pandemic. Even if these factors are considered to weigh in favor of the plaintiff, they do not weigh strongly or override the others that weigh against him, particularly in light of the fact that bumping his wife's interview to the head of the line would simply increase the delay for someone else in a similar personal, financial, and political situation. *Accord Memon*, 2023 WL 1438396, at *3 ("The Court notes again that, in light of the current backlog, tens of thousands of families around the world are currently suffering the exact same injury, many of whom are without the resources to attempt to skip the line.").

4. *TRAC* Factor Six

The sixth *TRAC* factor notes that the court "need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80. In this case, the plaintiff does not allege that impropriety is the cause of "agency lassitude." Moreover, he does not allege any facts suggesting bad faith on the part of the State Department in processing applications for visas of the type sought by the plaintiff for his wife. This factor, at best, is neutral.

In sum, however, the totality of the *TRAC* factors weighs in favor of the State Department. Because the plaintiff cannot show that the delay at issue here was unreasonable, the defendant is entitled to judgment on the APA claim. Because the APA claim fails, the mandamus action alleging unreasonable delay necessarily fails as well. *See Telukunta*, 2021 WL 2434128, at *4

(likewise dismissing mandamus petition); *Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020) ("Because Plaintiffs' APA claim fails, mandamus is not available.").

### III. CONCLUSION

For the reasons set forth herein, the defendant's Motion to Dismiss, construed as a summary judgment motion, will be granted, and this case will be dismissed. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge